**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**SHANNON DOBBS**                                                                                  **PLAINTIFF**

**V.**                              **CASE NO. 3:19-CV-00024-JTK**

**ANDREW SAUL**, *Commissioner*,
**Social Security Administration**                                                        **DEFENDANT**

## MEMORANDUM AND ORDER

Plaintiff Shannon Dobbs has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income (SSI) benefits under Title XVI of the Social Security Act.[1] Both parties submitted appeal briefs, and the case is now ready for decision.[2] The only issue before the Court is whether the Commissioner's decision is supported by substantial evidence. After reviewing the administrative record and the arguments of the parties, the Court finds the Commissioner's decision is supported by substantial evidence.

**I.     Background**

Ms. Dobbs protectively filed for SSI on July 28, 2016, alleging a disability[3] onset date

---

[1] Ms. Dobbs filed a previous action denying her claim for SSI. The decision of the Commissioner was affirmed on appeal. *Dobbs v. Berryhill*, Case No. 3:16-cv-181-BD.

[2] The parties have consented to the jurisdiction of the United States Magistrate Judge. (Docket Entry No. 10)

[3] "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that

of September 1, 2009. (Tr. 176-182, 190) She claims disability due to paranoid schizophrenia. (Tr. 195) Plaintiff's claim was denied at the initial and reconsideration levels. A hearing was held on January 31, 2018, before an Administrative Law Judge (ALJ)[4]. There, Plaintiff's counsel amended the alleged onset date to July 28, 2016, the date of the filing. (Tr. 31) The ALJ issued an unfavorable decision, denying Plaintiff's claim on June 21, 2018. (Tr. 8-23) The Appeals Council subsequently denied the request for review. (Tr. 1-3) It is from this decision that Plaintiff now brings her appeal.

## II.   Administrative Proceedings

Plaintiff was thirty-eight (38) years old at the time of the administrative hearing and had no past relevant work. (Tr. 33, 22) The ALJ applied the five-step sequential evaluation process[5] to Plaintiff's claim. Plaintiff satisfied the first step because she had not engaged in substantial gainful activity since her alleged onset date of July 28, 2016. At step two, the ALJ found that Plaintiff had the following medically determinable impairments[6]: obesity,

---

results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[4]The Honorable John H. Goree.

[5]The five part test asks whether the claimant: (1) is currently employed; (2) severely impaired; (3) has an impairment or combination of impairments that meet or approximate a listed impairment; (4) can perform past relevant work; and if not, (5) can perform any other kind of work. Through step four of this analysis, the claimant has the burden of showing that he is disabled. Only after the analysis reaches step five does the burden shift to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *Steed v. Astrue*, 524 F.3d 872, 875 n. 3 (8th Cir. 2008).

[6]A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

major depressive disorder, and schizophrenia, but at step three, he found that none of these impairments met or equaled a listing. Before proceeding to step four, the ALJ determined Plaintiff had the residual functional capacity[7] (RFC) to perform light work[8] with restrictions: (1) she could only occasionally climb, stoop, kneel, crouch, and crawl; (2) she could lift 20 pounds occasionally and 10 pounds frequently; (3) she could sit, stand, and walk six to eight hours, one to two hours without interruption; (4) the work must be unskilled, with rote activities; (5) she could understand, remember, and follow concrete instructions; (6) she could have very little contact and social interaction with the public; and (7) she could work alongside coworkers, such as meeting and greeting, but no real interaction, such as discussions or passage of information. (Tr. 16)

The ALJ found Plaintiff had no past relevant work. (Tr. 22) Relying on the testimony of a vocational expert (VE), the ALJ found that, considering Plaintiff's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, such as poultry boner and marking clerk. (*Id.*) Accordingly, the ALJ found

---

[7]"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (Social Security Administration, July 2, 1996).

[8]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R, § 416.967(b).

Petitioner was not disabled.  (Tr. 23)

### III.     Plaintiff's Allegations

Petitioner claims the ALJ's decision at step five of the sequential evaluation that she is not disabled because she can perform other work in the national economy is not supported by substance evidence on the record as a whole.  (Doc. 11, at p. 15) Specifically, Plaintiff contends (1) the ALJ wrongly discredited the opinion of Mary W. Wenger, M.D., her treating psychiatrist; and (2) the ALJ determined that she suffered from moderate deficiencies in concentration, persistence, and pace, but he did not include that limitation in his hypothetical to the VE.  (*Id.* at pp. 16-28)

### IV.     Discussion

#### A.     Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000); 42 U.S.C. § 405(g).  "Substantial evidence" in this context is less than a preponderance but more than a scintilla.  *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).  In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted)   The Court does not "reweigh the evidence presented to the ALJ," *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record *de novo*." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).  Instead, if, after reviewing the evidence, the Court finds it "possible to draw two inconsistent positions from

the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence exists for the opposite decision. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B. Arguments on Appeal

Plaintiff contends substantial evidence does not support the ALJ's decision that she can perform other work in the national economy. Plaintiff's argument contains several other arguments also, and the Court will address them each in turn.

1. <u>RFC and weight given to treating psychiatrist's opinion</u>

Plaintiff argues that Dr. Wenger's opinions are inconsistent with the ALJ's RFC assessment at step four, noting that the ALJ found her mental disorders only limit her to unskilled work with rote activities, concrete instructions and very little contact or social interaction with the public, and only meeting and greeting coworkers. (Doc. No. 11, p. 19) According to Plaintiff, Dr. Wenger's opinion indicates far more significant limitations.

The RFC is "the most [a claimant] can still do despite" his or her "physical or mental

limitations." 20 C.F.R. § 416.945(a). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Ultimately, the determination of the Plaintiff's RFC is a medical question. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). As such, the determination of Plaintiff's ability to function in the workplace must be based on some medical evidence. *Id.*; *see also Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

Here, the ALJ's RFC is consistent with the evidence of record. The ALJ properly considered all of the medical and other relevant evidence of record in making his RFC determination, including Plaintiff's descriptions of limitations, observations of treating and examining physicians and others, and medical records including any observations therein.

Plaintiff claims the ALJ failed to give proper weight to Dr. Wenger's opinion. The argument lacks merit.

> Under the Commissioner's regulations, a treating physician's opinion is given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Accordingly, an ALJ should "give good reasons" for discounting a treating physician's opinion.

*Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002) (internal citations omitted). An ALJ may discount or disregard a treating physician's opinion if the treating physician renders inconsistent opinions that undermine the credibility of the discounted opinion. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

6

In this case, the medical evidence indicates Plaintiff can perform at least unskilled light work, except for the source statements of Dr. Wenger. Dr. Wenger provided a treating source statement on July 13, 2017, that provided Plaintiff had been under her care for treatment for schizophrenia since September 9, 2014. She stated Plaintiff was compliant with her medication and attended her appointments regularly. She noted Plaintiff has had at least two inpatient hospitalizations for psychotic decomposition, but her worst symptoms "have been under fairly good control over the past (almost) 3 years but her negative symptoms persist and limit her functioning." (Tr. 417-18, Exhibit B8F). Dr. Wenger stated Plaintiff made a conscious effort to keep her stress level low, kept a rigid daily routine to help care for her household and children. *Id.* She opined Plaintiff had a low mood and difficulty with motivation to do anything beyond her basic routine, and she felt Plaintiff would not be able to handle the stress of novel situations or unexpected stressors, making information processing difficult, if not impossible. *Id.* Because of these difficulties, Dr. Wenger found in her professional opinion that Plaintiff "would not be able to perform in a competitive work environment to any meaningful degree." *Id.* at 418. A Medical Source Statement signed by Dr. Wenger and dated November 21, 2017, found Plaintiff markedly limited in some areas related to understanding and memory; sustained concentration and persistence; social interaction and adaptation. (Tr. 714-16, Exhibit B13F) Dr. Wenger noted on average Plaintiff's impairments and treatment would cause her to miss work more than three days per month. *Id.* at 716.

The ALJ gave the opinion some weight but discounted it to the extent it contradicted

the medical evidence. (Tr. 20) He determined, however, that Dr. Wenger's determination of disability was unsupported by the record. *Id.* Of course, Dr. Wenger's opinion that Plaintiff is disabled is not conclusive to the issue, as "disability is a legal, not a medical, determination." *Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000). However, "[t]he regulations require the ALJ to give reasons for giving weight to or rejecting the statements of a treating physician," and the ALJ did just that in this case. *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008); *see also* 20 C.F.R. § 416.927(d)(2)[9].

The medical records show, on both August 3, 2016, and September 9, 2016, Plaintiff presented to 1st Choice Healthcare for evaluation. (Tr. 296, 300) She reported she had not in the last two weeks been bothered by feeling down, depressed, or hopeless. She also did not report loss of interest or pleasure in doing things. Her August 16, 2016, visit to Mid-South Health Systems, Inc. noted Plaintiff had a history of mental health treatment with three hospitalizations but none in the last year. (Tr. 340) When off her medications, she stops eating, has poor sleep patterns, hears voices, gets depressed, and can not care for herself or her children. *Id.* Plaintiff reported that her medications were working well for her. Dr. Wenger found Plaintiff to show difficulty with latency of thought/speech but capable of caring for her children. Plaintiff was taking 10mg of Haldol every day and denied any side effects. *Id.* She noted that her antidepressant, Celexa 40mg a day, was also working well.

---

[9]The Social Security Administration has adopted new regulations regarding the evaluation of medical evidence, including treating doctors opinions. *See* 20 C.F.R. § 416.920c. The new regulations apply to claims filed after March 27, 2017, however; Plaintiff's claim are reviewed under the prior treating doctor regulations and relevant case law because it was filed prior to the effective date of the new regulations.

*Id.* at 341. The assessment was that Plaintiff would remain on Haldol and Celexa and be seen back in four months or as needed. *Id.* A September 28, 2016, treatment plan review visit indicated Plaintiff was doing well and that her symptoms were manageable with medication. (Tr. 346)

Plaintiff presented to Dr. Wenger on December 13, 2016, and reported depression. (Tr. 361) She stated she had been sleeping much of the time and did not feel like doing anything around the house for the last two to three months, although she was getting up to take care of her kids and shower when needed. Plaintiff denied suicidal thoughts and auditory hallucinations. *Id.* Dr. Wenger cut her Haldol down to 5mg and started Invega at 3mg. She also cut the dosage for Celexa down to half a tablet for a week and then ordered her to stop taking it. She started her on Paxil 20mg as her new antidepressant. *Id.* A December 30 2016, followup appointment indicated Plaintiff was doing better with her involuntary movements and had no suicidal thoughts. (Tr. 367) Dr. Wenger cut her Haldol completely and increased her Invega to 6mg daily. She scheduled to see Plaintiff two weeks out to see how the Paxil was working, but Plaintiff missed her January 17, 2017, appointment. (Tr. 370) On January 31, 2017, Plaintiff presented to Dr. Wenger, who noted Plaintiff was more spontaneous verbally, had a more affective range and seemed more self expressive. (Tr. 371) Plaintiff denied any teeth grinding at night and noted that her auditory hallucinations were "pretty much gone." *Id.* Plaintiff reported not sleeping as much and more daily activity around the house, including cooking for three kids. *Id.* Impairments that are controllable or amenable to treatment do not support a finding of total disability.

9

*Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

On March 16, 2017, Plaintiff reported the same as she did on January 31st and stated her depression was in good remission with Paxil. (Tr. 460) On May 5, 2017, Plaintiff reported she liked her Invega pills and they had "pretty much eliminated most of her involuntary movements." (Tr. 451) She was spending less time in bed, although still feeling tired a good deal during the day, but she had plans to start walking with her daughter to slow down weight gain. *Id.* Plaintiff reported Paxil was working better for her depression. Plaintiff told Dr. Wenger she was denied disability and had filed another application and changed attorneys. Dr. Wenger agreed to write a letter on her behalf "when she next comes up for review." *Id.* Dr. Wenger provided that letter in July 2017 that Plaintiff could not work. At her August 8, 2017, appointment, Dr. Wenger noted that Plaintiff's mood was stable and she was sleeping well. (Tr. 440) On examination, Plaintiff had a broad range of affect, although still lacking motivation and executive functioning. She was "able to report her symptoms in a logical, coherent, and goal-directed manner, although her ability to link cause and affect is often strained." *Id.* By September 26, 2017, Plaintiff reported to Dr. Wenger that "as long as she is on her medication, everything is fine." (Tr. 707) Because she was going through a divorce from an abusive husband, Plaintiff reported more depression since she had not been able to take her medication but no suicidal ideation. *Id.* She felt she could benefit from more therapy along with her medications, and Dr. Wenger was setting her up with a therapist and getting her back on track with medication. Dr. Wenger found her concentration adequate for daily functioning. *Id.*

The undersigned upholds the ALJ's decision, finding Dr. Wenger's opinion "inconsistent with the record as a whole." *Travis v. Astrue*, 477 F.3d 1037 (8th Cir. 2007). The ALJ properly discounted the complained-about opinion because her ultimate finding of disability was inconsistent with treating records. Further, the ALJ did not completely disregard Dr. Wenger's opinion, as he concurred with the opinion "to the extent her limitations [were] consistent with the residual functional capacity above and found to be appropriate and consistent with the evidence of record as a whole." (Tr. 20)

Plaintiff argues further that, while medication controlled some of her symptoms, she still had problems with daytime fatigue, executive functioning, speech latency, and short-term memory and concentration. (Doc. No. 11, pp. 22-23) As Defendant notes, the ALJ never found Plaintiff symptom-free, and impairments even reasonably controlled with treatment are not disabling. (Doc. 12, p. 8) (citing *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016)). With a record that exceeds 700 pages, it is no surprise Plaintiff can point to some evidence which detracts from the Commissioner's determination. *See Igo v. Colvin*, 839 F.3d 724, 728, 731 (8th Cir. 2016) ("We may not reverse that decision simply because we would have reached a different conclusion [than the Commissioner] or because substantial evidence supports a contrary conclusion."

Additionally, Plaintiff states the ALJ disregarded Dr. Wenger's opinion to support her argument she had marked limitations in functioning under Paragraphs B and C of Listing 12.03, the listing for schizophrenia. The paragraph B criteria requires marked limitations in two of the following categories (or an extreme limitation in one): (1) understanding,

11

remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. The paragraph C criteria for Listing 12.03 requires "a medically documented history of the existence of the disorder over a period of at least 2 years," as well as evidence of both "a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder" and evidence of the claimant's "marginal adjustment."  As noted by the ALJ, and shown above by the recitation of treatment observations and assessments, Dr. Wenger's own treatment notes did not reflect the degree of marked impairments indicated in her opinion. (Tr. 20) Moreover, the ALJ noted the opinion was not supported by clinical and objective findings. The ALJ can use such information to support the decision to give the opinion less weight. *See Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014) (opinion entitled to little weight where it cited no medical evidence, provided little to no elaboration, and was inconsistent with the underlying record as a whole).  Thus, the Court finds substantial evidence to support the ALJ's decision to give Dr. Wenger's opinion only some weight to the extent it was consistent with the record evidence.

To the extent Plaintiff challenges the weight the ALJ gave the consulting physician opinions, the argument lacks merit. (Doc. No. 11, pp. 25-26) The state agency experts determined Plaintiff could perform work with limitations. (Tr. 95, 112) The ALJ gave those opinions significant weight because they were consistent with the record as a whole and provided detailed explanations and bases for the conclusions reached.  *See* 20 C.F.R. §416.927(c)(3) and (4) (weight assigned to medical opinions depends on explanation and

relevant evidence provided to support the opinion and consistency with the record as a whole). It does not change the results here based on the fact that the state agency experts did not have access to Dr. Wenger's medical source statements. The ALJ found those opinions inconsistent with Dr. Wenger's own treatment notes. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ's hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.").

    2.    <u>Step Five Evaluation</u>

Plaintiff asserts next that the ALJ erred at step five when he found she suffered from moderate deficiencies in concentration, persistence, and pace but failed to include that limitation in his hypothetical to the VE. As a preliminary matter, it is significant to note the ALJ did not necessarily attribute all three impairments—deficient concentration, persistence, and pace—to Plaintiff. "The classification is written in the disjunctive: "Deficiencies of Concentration, Persistence **or** Pace." *See Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (emphasis in original) . In assessing the degree of functional limitation one has, the ALJ rates a claimant in four broad functional areas, one of which is concentration, persistence, or pace. 20 C.F.R. § 416.920a(c)(3). However, when the RFC is determined, limitations found at step two or three do not have to be reflected in the RFC. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not

13

necessarily establish the other.") (citation omitted). The hypothetical upon which the ALJ relied included functional limitations related to obesity and the ability to "understand, follow and remember concrete instructions" with very little social interaction with the public and coworkers. (Tr. 47-78)

Plaintiff relies on *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996) for the proposition that a limitation to simple, routine work does not adequately account for moderate limitations in concentration, persistence, or pace. *Newton* has been superceded. In *Howard v. Massanari*, the Eighth Circuit determined that limitation to simple, routine, and repetitive work adequately captures deficiencies in concentration, persistence, or pace. 255 F.3d 577, 582 (8th Cir. 2001). In *Chismarich v. Berryhill*, the Eighth Circuit further outlined that moderate limitations in concentration, persistence, or pace "are consistent with being able to understand, remember and carry out simple instructions while performing non-detailed tasks." 888 F.3d 978, 980 (8th Cir. 2018).

The hypothetical posed to the VE mirrored the ALJ's RFC assessment, and "[a] hypothetical question is properly formulated if it sets forth impairments 'supported by substantial evidence in the record and accepted as true by the ALJ.'" *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). The Court concludes that the ALJ did not err in his step five analysis.

## V.     Conclusion

The Court has carefully reviewed the record and finds the Commissioner's decision to be supported by substantial evidence and free of significant legal error. Plaintiff's

impairment does not prevent unskilled light work.

THEREFORE, the Court hereby affirms the Commissioner's final determination and dismisses Plaintiff's Complaint with prejudice.

SO ORDERED this 15th day of October, 2019.

_____
UNITED STATES MAGISTRATE JUDGE